IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Stephanie Harvey, | ) | |
| | ) | C/A No. 8:14-cv-01966-JMC-JDA |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| Saluda Smiles Family Dentistry, Carolina | ) | |
| Dental Alliance, VSM Management LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter is before the Court on Defendants' motion for summary judgment. [Doc. 35.] Plaintiff, a black female, alleges race discrimination, hostile work environment, and retaliation claims pursuant to Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), and pendent state law claims of public policy discharge and defamation. [Doc. 1.] Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and Local Civil Rule 73.02(B)(2)(g), D.S.C., all pretrial matters in employment discrimination cases are referred to a United States Magistrate Judge for consideration.

Plaintiff filed this action on May 16, 2014. [Doc. 1.] On November 16, 2015, Defendants filed a motion for summary judgment. [Doc. 35.] Plaintiff filed a response in opposition on December 3, 2015 [Doc. 36] and filed additional attachments on December 4, 2015 [Doc. 37]. Accordingly, the motion for summary judgment is ripe for review.

**BACKGROUND**

Plaintiff began working for Saluda Smiles Family Dentistry, P.A. ("SSFD") in 2005 as a dental assistant. [Docs. 37-1 at 2; 35-1 at 2.] In January 2012, SSFD was sold to Carolina Dental Alliance ("CDA") [Doc. 35-4 at 1], and in July 2012, Dr. Seung Kyu Choi ("Dr. Choi") became the practice's dentist [Doc. 37-3 at 4:20–24]. In late 2012, some of CDA's holdings, including the practice that employed Plaintiff, were sold to VSM Management, LLC ("VSM"). [Doc. 35-4 ¶ 4.]

Plaintiff alleges that she and Dr. Choi had a difficult working relationship. On one occasion, Dr. Choi dropped an instrument on the floor; Plaintiff made a comment to Dr. Choi about it, and Dr. Choi reprimanded her in front of the patient. [Doc. 35-2 at 9.] Plaintiff and Dr. Choi discussed the event with Amanda Hayes ("Hayes"), the office manager, and an informal incident report was created documenting the event. [*Id.* at 10, 35–36.] On another occasion, Dr. Choi asked Plaintiff to clean the office floors because he did not feel that she was keeping her area clean. [*Id.* at 15–16.] Hayes created another incident report detailing that Plaintiff felt "nitpicked" by Dr. Choi and Dr. Choi felt that Plaintiff was rude to him. [*Id.* at 38–39.]

In early 2013, Jennifer Mitchell ("Mitchell") became the operations manager for VSM. [Doc. 35-4 ¶ 5.] Mitchell was responsible for visiting the various dental offices owned by VSM and tending to their day to day administrative management. [Doc. 35-3 ¶ 9.] Mitchell was told by Hayes that the office employees, including Plaintiff, were concerned because Dr. Choi was a new dentist, he sometimes made mistakes, and he had difficulty communicating with the staff. [Doc. 35-4 ¶ 7.] Mitchell had a conversation with Plaintiff on

at least one occasion regarding Plaintiff's attitude toward Dr. Choi.  [Docs. 35-4 ¶ 10; 35-2 at 24.]

Plaintiff filed a complaint against Dr. Choi with the Dental Board at the South Carolina Department of Labor, Licensing, and Regulation around February 2013.  [Docs. 35-2 at 25–26; 1 ¶ 16.]  Plaintiff filed a Charge of Discrimination ("Charge") with the South Carolina Human Affairs Commission ("SCHAC") and the United States Equal Employment Opportunity Commission ("EEOC") on April 24, 2013.  [Doc. 35-2 at 20–47.] On April 25, 2013, Plaintiff was called into a meeting with Hayes and Mitchell and was terminated.[1] [Docs. 35-5 ¶ 19; 37-1 at 22.]

## APPLICABLE LAW

**Summary Judgment Standard**

Rule 56 states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a).  A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant.  *Id.* at 257.  When determining whether a genuine issue has been raised, the court must construe all

---

[1]There are conflicting statements and evidence regarding the date of Plaintiff's termination; for example, in the Complaint, Plaintiff states that she was terminated on April 24, 2013 [Doc. 1 ¶ 18].  However, in their memorandum in support of the motion for summary judgment, Defendants appear to concede that, for purposes of this motion, Plaintiff was terminated on April 25, 2013. [Doc. 35-1 at 7 n. 2.]  Accordingly, the Court will refer to this date in its analysis of Plaintiff's claims.

3

inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings.  *Id.* at 324.  Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue.  *Id.*  Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion.  *Anderson,* 477 U.S. at 252.  Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion.  *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir.1985), *overruled on other grounds*, 490 U.S. 228 (1989).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted."  *Anderson*, 477 U.S. at 248.  Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

4

> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).  Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

## DISCUSSION

**Disparate Treatment**

Defendants argue that Plaintiff has failed to properly exhaust her administrative remedies with respect to her assertion that she was terminated because of her race. [Doc. 35-1 at 18.]  Further, Defendants argue Plaintiff has not overcome the presumption that Defendants' legitimate, nondiscriminatory reason for terminating Plaintiff was a pretext for unlawful termination. [*Id.* at 18–19.] The Court agrees Defendants are entitled to summary judgment with respect to Plaintiff's disparate treatment claim.

Title VII makes it unlawful for an employer "to discriminate against any individual with respect to . . . compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1). In 1991, Congress amended Title VII to include that "an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice."  *Id.* § 2000e-2(m).

As the Fourth Circuit Court of Appeals has explained in the wake of *Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003), a Title VII plaintiff may "avert summary judgment . . .

through two avenues of proof." *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 284 (4th Cir. 2004). First, a plaintiff may survive a motion for summary judgment "by presenting direct or circumstantial evidence that raises a genuine issue of material fact as to whether an impermissible factor . . . motivated the employer's adverse employment decision." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 318 (4th Cir. 2005). The Fourth Circuit defines "direct evidence" as evidence that the employer "announced, admitted, or otherwise indicated that [the forbidden consideration] was a determining factor . . . ." *Cline v. Roadway Express, Inc.*, 689 F.2d 481, 485 (4th Cir. 1982) (citing *Spagnuolo v. Whirlpool Corp.*, 641 F.2d 1109, 1113 (4th Cir. 1981)). In other words, direct evidence is "evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision." *Fuller v. Phipps*, 67 F.3d 1137, 1142 (4th Cir. 1995), *abrogated on other grounds by Desert Palace*, 539 U.S. 90. Circumstantial evidence may "includ[e] but [is] not limited to proof of the claimant's general qualifications, from which the inference of . . . discrimination may rationally be drawn independently of any presumption [of discrimination]." *Cline*, 689 F.2d at 485 (footnote omitted). To demonstrate an unlawful employment practice in these so-called mixed-motive cases, a plaintiff "need only present sufficient evidence for a reasonable jury to conclude, by a preponderance of the evidence," that the impermissible factor was a motivating factor, i.e., "direct evidence of discrimination is not required in mixed-motive cases." *Desert Palace*, 539 U.S. at 101–02.

Alternatively, a plaintiff may proceed under the *McDonnell Douglas* "pretext" framework. *Id.* (quoting *Hill*, 354 F.3d at 285). Under this framework, an employee must

first prove a prima facie case of discrimination.[2]  *McDonnell Douglas Corp. v. Green*, 411

U.S. 792, 802 (1973).  If the plaintiff succeeds, the burden then shifts to the employer to

articulate some legitimate, nondiscriminatory reason for the adverse employment action.

*Id.*   By providing such an explanation, the employer rebuts the presumption of

discrimination created by the prima facie case, and "[t]he presumption, having fulfilled its

role of forcing the [employer] to come forward with some response, simply drops out of the

picture."  *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 510–11 (1993) (citing *Tex. Dep't of*

*Cmty. Affairs v. Burdine*, 450 U.S. 248, 255 (1981)).   If the employer articulates a

legitimate, nondiscriminatory reason, the burden shifts back to the employee to show that

the articulated reason was actually a pretext for discrimination.  *McDonnell Douglas*, 411

U.S. at 804.

Before filing suit under Title VII, a plaintiff must exhaust her administrative remedies

by filing a charge with the EEOC.  *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 247 (4th

Cir. 2000) (citing *King v. Seaboard Coast Line R.R. Co.*, 538 F.2d 581, 583 (4th Cir. 1976)).

The allegations contained in the administrative charge of discrimination generally limit the

scope of any subsequent judicial complaint.   *King*, 538 F.2d at 583 (stating that a

subsequent civil suit "may encompass only the 'discrimination stated in the charge itself or

---

[2] To establish a prima facie case of discrimination, a plaintiff must demonstrate (1) he is a member of a protected class; (2) he suffered an adverse employment action; (3) he was performing his job duties at a level that met the employer's legitimate expectations at the time of the adverse employment action; and (4) other employees who are not members of the protected class did not suffer the adverse employment action under similar circumstances.  *See Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 133 (4th Cir. 2002); *see also EEOC v. Sears Roebuck & Co.*, 243 F.3d 846, 851 n.2 (4th Cir. 2001) ("What is critical with respect to the fourth element is that the plaintiff demonstrate he was not hired (or fired or not promoted, etc.) 'under circumstances which give rise to an inference of unlawful discrimination.'" (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981))).

developed in the course of a reasonable investigation of that charge'") (quoting *EEOC v. Gen. Elec. Co.*, 532 F.2d 359, 365 (4th Cir. 1976)).  Only those claims stated in the initial administrative charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent lawsuit.  *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 963 (4th Cir. 1996) (affirming the district court's dismissal of some of the plaintiff's claims because they were outside the scope of her original EEOC charge and were therefore time barred). Because the EEOC has the authority to investigate charges and take necessary action to reach a resolution of the claims, permitting a federal complaint to include allegations outside the scope of the predicate EEOC charge would circumscribe the EEOC's purpose as well as deprive the employer of notice of the plaintiff's charges.  *See Dorsey v. Pinnacle Automation Co.*, 278 F.3d 830, 838 (8th Cir. 2002) ("Allowing a complaint to encompass allegations outside the ambit of the predicate EEOC charge would circumscribe the EEOC's investigatory and conciliatory role, as well as deprive the charged party of notice of the charge, as surely as would an initial failure to file a timely EEOC charge."  (internal quotations and citation omitted)).  When a claim "raised under Title VII exceed[s] the scope of the EEOC charge and any charges that would naturally have arisen from an investigation thereof, [it is] procedurally barred."  *Dennis v. County of Fairfax*, 55 F.3d 151, 156 (4th Cir. 1995).

With respect to Plaintiff's assertion that her termination was race discrimination under Title VII, the Court finds that she has failed to exhaust her administrative remedies. The adverse employment action at issue—termination—is distinct from the conduct found in Plaintiff's April 2013 Charge, which concerned only an allegation that Plaintiff had been

harassed because of her race from July 20, 2012 through March 21, 2013 by Dr. Choi.[3]
[*See* Doc. 35-2 at 47.]  Courts have routinely held that when the claim raised in formal
litigation involves a different form of unlawful employment practice than the one described
in the administrative charge, the discrete adverse employment action must be
administratively exhausted.  *See, e.g.*, *Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 300–01
(4th Cir. 2009) (finding that claims of age, sex, and race discrimination were not exhausted
where a charge alleged only retaliation); *Chacko v. Patuxent Inst.*, 429 F.3d 505, 509 (4th
Cir. 2005) ("A claim will also typically be barred if the administrative charge alleges one
type of discrimination—such as discriminatory failure to promote—and the claim
encompasses another type—such as discrimination in pay and benefits."); *Bryant v. Bell
Atl. Md., Inc.*, 288 F.3d 124, 132–33 (4th Cir. 2002) (finding that claims of retaliation and
sex and color discrimination were not exhausted where a charge alleged only race
discrimination); *Lawson v. Burlington Indus., Inc.*, 683 F.2d 862, 863–64 (4th Cir. 1982)
(holding that because the  plaintiff's EEOC charge alleged only a discriminatory layoff
claim, the court lacked jurisdiction over the plaintiff's discriminatory failure-to-rehire claim);
*Alston v. Astrue*, 2012 WL 665982, at *4 (D. Md. Feb. 28, 2012) (concluding that a plaintiff's
"failure-to-promote claims may not proceed before this Court because they were not
included in her EEO complaints," and explaining that "a discriminatory failure to promote
is not the type of claim that would fall within the 'scope of the administrative investigation
that can reasonably be expected to follow' [plaintiff's] initial charges of discrimination")
(quoting *Chisholm*, 665 F.2d at 491).  Moreoover, there is no indication that Plaintiff did not

---

[3]The Court notes that Plaintiff checked the box on the intake questionnaire
indicating that the discrimination was ongoing.  [Doc. 35-2 at 47.]

have an opportunity to amend her Charge or was prevented from amending for some reason.  *See* 29 C.F.R. § 1601.12(b) (stating that a plaintiff may supplement or amend a charge after it is filed so as to include "amendments alleging additional acts which constitute unlawful employment practices related to or growing out of the subject matter of the original charge."); *see also Chacko*, 429 F.3d at 506 (holding that a plaintiff has failed to exhaust administrative remedies where a charge of discrimination references "different time frames, actors, and discriminatory conduct" than the allegations found in a complaint.) Thus, Plaintiff failed to exhaust her administrative remedies regarding her race discrimination claim.[4]

**Hostile Work Environment Claim**

Defendants contend that, to the extent the Plaintiff brings a hostile work environment claim,[5] Plaintiff has failed to establish a prima facie case.  [Doc. 35-1 at 15– 17.]  Plaintiff argues that she has established a prima facie case for her hostile work environment claim sufficient to survive summary judgment.  [Doc. 36 at 11–12.]  The Court agrees Defendants are entitled to summary judgment with respect to this claim.

---

[4]Plaintiff's only alleged adverse employment action is termination, which she failed to exhaust; accordingly, she is unable to establish her race discrimination claim based on disparate treatment.  Further, even if the Court were to consider Plaintiff's claim she had been terminated as properly exhausted and find that Plaintiff had sufficiently established a prima facie case of race discrimination, Plaintiff has failed to show that Defendants' articulated nondiscriminatory reason for her termination was a pretext for the discriminatory actions, as explained in the retaliation section below.

[5]In the Complaint, Plaintiff does not allege a separate claim for hostile work environment [*see* Doc. 1]; however, although a hostile work environment claim is a separate legal claim from a disparate treatment discrimination claim and Plaintiff should have asserted each in a separate cause of action, her failure to plead them separately does not warrant preclusion of this claim.  *See Oroujian v. Delfin Grp. USA LLC*, 57 F.Supp.3d 544, 548 n.2 (D.S.C. 2014).

To prove a hostile work environment, the plaintiff must show that: (1) he was harassed because of his race; (2) the harassment was unwelcome; (3) the harassment was sufficiently severe or pervasive to create an abusive working environment; and (4) some basis exists for imputing liability to the employer. *Gilliam v. .C. Dep't of Juvenile Justice*, 474 F.3d 134, 142 (4th Cir. 2007); *Ocheltree v. Scollon Prods., Inc.*, 335 F.3d 325, 331 (4th Cir. 2003) (en banc).

In *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998), the Supreme Court reaffirmed its previously articulated standard for determining when a plaintiff has established a hostile work environment, stating that a plaintiff must establish that the environment was "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Faragher*, 524 U.S. at 787 (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21–22 (1993)). Actionable harassment occurs when the workplace is "permeated with discriminatory intimidation, ridicule, and insult." *Harris*, 510 U.S. at 21. Title VII is not a "general civility code." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998). "Workplaces are not always harmonious locales, and even incidents that would objectively give rise to bruised or wounded feelings will not on that account satisfy the severe and pervasive standard." *EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008). "[C]omplaints premised on nothing more than rude treatment by co-workers, callous behavior by supervisors, or a routine difference of opinion and personality conflict with one's supervisors are not actionable under Title VII." *Id.*

When considering a plaintiff's claim that she was subjected to a hostile work environment, the Court must consider the totality of the circumstances. Relevant factors

11

"may include the frequency of the discriminatory conduct; its severity; whether it was physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23. "To be actionable, the conduct must create an objectively hostile or abusive work environment, and the victim must also perceive the environment to be abusive." *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 184 (4th Cir. 2007).

Plaintiff has not shown that her alleged harassment was based on her race. Plaintiff has presented no direct evidence that any of the conduct was motivated by racial animus. Plaintiff points to no evidence that derogatory comments were made to her or anyone about her race. Moreover, Plaintiff has failed to establish that the conduct was sufficiently severe or pervasive to be actionable. Accordingly, Defendant's motion for summary judgment should be granted as to Plaintiff's hostile work environment claim.

**Retaliation**

Defendants argue Plaintiff failed to exhaust administrative remedies with respect to her Title VII retaliation claim because she failed to include it in her Charge, and, even if it had been properly exhausted, Plaintiff's claim fails on the merits. [Doc. 35-1 at 11–15, 19–23.] Plaintiff contends that she properly exhausted her administrative remedies with respect to her termination allegation and that she can establish a prima facie case of retaliation under the burden-shifting framework or under the direct method approach.[6]

---

[6]In her response in opposition to the motion for summary judgment, Plaintiff states that she can establish her claim pursuant to the direct method approach; however, the remainder of the memorandum concerns the burden-shifting framework. [*See* Doc. 36.] Accordingly, the Court will address only the burden-shifting framework.

[Doc. 36 at 9–11, 14–19.]  The Court finds that Plaintiff has exhausted her retaliation claim but summary judgment is appropriate based on an analysis of the merits of the claim.

The Court will first address whether Plaintiff has exhausted her administrative remedies.  The Fourth Circuit Court of Appeals has held that a plaintiff asserting a Title VII claim of retaliation for filing a previous administrative charge is not required to separately exhaust administrative remedies with regard to that retaliation claim.  *Nealon v. Stone*, 958 F.2d 584, 590 (4th Cir. 1992).  The exception does not apply when the alleged retaliatory acts occurred *before* the plaintiff filed a charge of discrimination.  *Wilson v. Dimario*, 139 F.3d 897, at *2 (4th Cir. 1998) (unpublished table decision) (holding that the exception in *Nealon* does not apply to an allegation of retaliation that occurred before the filing of an administrative charge and, therefore, could have been included in the charge); *see also Cornelius v. McHugh*, C/A No. 3:13-1018-CMC-PJG, 2014 WL 4536349, at *1 (D.S.C. Sept. 10, 2014) (granting a motion to dismiss for lack of exhaustion with respect to a claim that could have been raised in a charge of discrimination).  Here, Plaintiff alleges she was terminated in retaliation for filing a Charge.  As previously discussed, the parties have stipulated that Plaintiff was terminated on April 25, 2013.  [*See* Doc. 35-1 at 7 n.2.] Accordingly, Plaintiff could not have included an allegation of retaliation based on her termination in the Charge that she signed on April 24, 2013.  Thus, Plaintiff has exhausted her administrative remedies with respect to her retaliation claim.  The Court will proceed to a discussion of the merits of this claim.

Under Title VII, an employer is forbidden from taking action that discriminates against an employee because that employee has either "opposed any practice made an unlawful employment practice by this subchapter" or has "made a charge, testified,

assisted, or participated in a Title VII investigation proceeding, or hearing under this subchapter." 42 U.S.C. § 2000d–3(a).  The purpose of this anti-retaliation provision is to prevent "an employer from interfering (through retaliation) with an employee's efforts to secure or advance enforcement of the Act's most basic guarantees." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 63 (2006).  Thus, through the two clauses of the anti-retaliation provision, Title VII protects activities that can be characterized as opposing a practice that is unlawful under Title VII or as participating in a Title VII investigation, proceeding, or hearing.  *Id.* at 59 (quoting 42 U.S.C. § 2000e–3(a)); *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998) (stating "[p]rotected activities fall into two distinct categories: participation or opposition"); *see also Crawford v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 555 U.S. 271, 274 (2009) (stating the first clause of the anti-retaliation provision is known as the "opposition clause," and the second clause is known as the "participation clause").  Activities protected under the participation clause—(1) making a charge; (2) testifying; (3) assisting; or (4) participating in any manner in an investigation, proceeding, or hearing under Title VII—are those "essential to the machinery set up by Title VII," and therefore, Title VII prohibits employers from retaliating against employees who undertake these actions.  *Laughlin*, 149 F.3d at 259 n.4 (internal quotation marks omitted) (quoting *Hasimoto v. Dalton*, 118 F.3d 671, 680 (9th Cir. 1997)).

Like discrimination claims, a plaintiff may prove a retaliation claim through direct evidence or by using the *McDonnell Douglas* burden-shifting framework.[7]  *Smith v. First*

---

[7]To establish a prima facie case of retaliation, the plaintiff must demonstrate "(1) she engaged in a protected activity, (2) the employer acted adversely against her, and (3) there was a causal connection between the protected activity and the asserted adverse action." *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 337 (4th Cir. 2011).

*Union Nat'l Bank*, 202 F.3d 234, 248 (4th Cir. 2000); *Cooper v. City of N. Myrtle Beach*, No. 4:10-cv-1676, 2012 WL 1283498, at *6 (D.S.C. Jan. 25, 2012).  Similarly, it is ultimately the plaintiff's burden to demonstrate the employer's actions were motivated, at least in part, by an intent to retaliate.  *See McDonnell Douglas*, 411 U.S. at 804; *Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 218 (4th Cir. 2007); *Cooper*, 2012 WL 1283498, at *10.

To prove the causal connection prong of a prima facie case of retaliation, a plaintiff asserting a retaliation claim must be able to show that his employer took the adverse action "'*because* the plaintiff engaged in a protected activity.'"  *Holland*, 487 F.3d at 218 (emphasis in original) (quoting *Dowe v. Total Action Against Poverty in Roanoake Valley*, 145 F.3d 653, 657 (4th Cir. 1998)).  Thus, to demonstrate causation, a plaintiff must first show that the employer was aware of the protected activity.  *See Shield v. Fed. Express Corp.*, 120 F. App'x 956, 962 (4th Cir. 2005) (citing *Luckie v. Ameritech Corp.*, 389 F.3d 708, 715 (7th Cir. 2004)).  Here, Plaintiff has failed to establish that the decision makers knew about the protected activity before Plaintiff's termination.  It appears from the record that Mitchell and Mark Lakis ("Lakis"), the Chief Executive Officer for VSM, were the people who had the authority and who ultimately made the decision to terminate Plaintiff.  [Docs. 35-3, 35-4.] Plaintiff contends that on March 18, 2013, she informed Hayes that she had filed a complaint alleging discrimination with the EEOC [Doc. 37-1 at 26]; however, Plaintiff has failed to establish that any of the decision makers learned of this protected activity before her termination.  Mitchell averred that at no point during Plaintiff's employment was she aware that Plaintiff had made any complaint of discrimination and was only informed after her termination her Charge had been filed with SCHAC.  [Doc. 35-4 ¶ 18.]  Lakis acknowledged that he appeared to be the ultimate decision maker and stated that he had

15

no knowledge that Plaintiff had filed a Charge at the time Plaintiff was terminated but was made aware of her filings after she had been terminated; he further stated that Hayes had no authority to "hire, fire, promote, demote, or reassign any employee." [Doc. 35-3 ¶¶ 16, 18, 20.] In support of her claim, Plaintiff testified that Hayes *could have* told Mitchell about the protected activity. [*Id.* at 31.] Because Plaintiff cannot establish that the decision makers knew that she had engaged in protected activity before she was terminated, Plaintiff has not met her burden of establishing a causal connection.

Moreover, even if Plaintiff had presented sufficient evidence to establish a prima facie case of retaliation, she has failed to present any evidence of pretext following Defendants' articulated legitimate, nonretaliatory explanation for terminating Plaintiff's employment—because Plaintiff was not making sufficient efforts to improve her relationship with Dr. Choi and her attitude did not improve. Plaintiff testified that the entire office had a strained relationship with Dr. Choi. [Doc. 35-2 at 13.] Further, two incident reports created by Hayes detail specific instances where Plaintiff and Dr. Choi did not get along and required outside intervention to resolve their disagreements. [*Id.* at 35–36, 38–39.] In the November 1, 2012 incident report, Hayes stated that she felt the situation had not been handled well and both parties exhibited emotional responses. [*Id.* at 36.] Mitchell averred that she discussed with Plaintiff that her behavior was rude and offensive and asked her to try to be more respectful towards Dr. Choi; Mitchell stated Plaintiff told her she did not get along with Dr. Choi.[8] [Doc. 35-4 ¶ 10.] Lakis averred that Mitchell informed him that she believed Plaintiff was resistant to working with Dr. Choi and that Dr. Jim Nasim,

---

[8]Plaintiff testified that she did not remember making this statement. [Doc. 35-2 at 24.]

a dentist with a ten-percent interest in VSM, told Lakis that he had experienced some of the same attitude with Plaintiff.  [Doc. 35-3 ¶ 12.]  Accordingly, Defendant has fulfilled its burden to articulate a legitimate, non-retaliatory explanation for Plaintiff's suspension and termination.

Plaintiff, on the other hand, has failed to demonstrate that Defendants' articulated reason was mere pretext.  To prove an employer's articulated reason is a pretext for retaliation, a plaintiff "must prove '*both* that the reason was false, *and* that [retaliation] was the real reason' for the challenged conduct." *Jiminez v. Mary Wash. Coll.*, 57 F.3d 369, 378 (4th Cir. 1995) (emphasis in original) (quoting *St. Mary's Honor Ctr.*, 509 U.S. at 515). Here, Plaintiff fails to direct the Court to any evidence to establish Defendant's articulated reason for terminating Plaintiff was false or that retaliation was the real motivation in these disciplinary decisions.  Aside from Plaintiff's assertion that Defendants' proffered reasons are outlandish and insufficient to establish a legitimate, nondiscriminatory reason for her termination [Doc. 36 at 17–18], nothing in the record supports an inference that Defendants' explanation was pretextual or that the decision makers did not believe Plaintiff's attitude had not improved.  There is ample evidence that Plaintiff and Dr. Choi did not get along, including: two incident reports created by Hayes that detail specific instances where Plaintiff and Dr. Choi disagreed, Mitchell's statement that Plaintiff consistently failed to improve her attitude toward Dr. Choi and that she felt Plaintiff was impeding office morale, and Plaintiff's testimony  that she had disagreements with Dr. Choi.  [Doc. 35-2 at 7, 14, 35–36, 38–39.]

With respect to Plaintiff's assertion that there had been discussions about replacing Dr. Choi is evidence that Defendants' legitimate, nondiscriminatory reason for Plaintiff's

17

termination is mere pretext, the Court disagrees.  Lakis averred that at some point he began to think that Dr. Choi might do better in an office where he could learn from a more experienced dentist; however, Lakis further stated that "if we had to choose between a full-time dentist who was making efforts to improve, and a part-time dental assistant who would not cooperate with the dentist, then we should terminate the dental assistant."  [Doc. 35-3 ¶¶ 13, 14.]  These statements are not inconsistent.  Simply because Lakis had considered moving Dr. Choi to another practice does not imply that he could not also have had concerns about Plaintiff's attitude.  Further, Plaintiff has provided no evidence that Lakis or Mitchell did not believe that her attitude was poor.  Thus, Plaintiff has not established that the proffered reason was false or that retaliation was the real reason she was terminated and has failed to establish a genuine issue of material fact remains as to whether Defendants' proffered reason for terminating Plaintiff was a pretext for discrimination.  Accordingly, because Plaintiff has not established her prima facie case of retaliation and has failed to demonstrate Defendants' articulated reason was a pretext for retaliation, the Court recommends summary judgment be granted on Plaintiff's Title VII retaliation claim against Defendants.[9]

**State Law Claims**

To the extent Plaintiff alleges public policy discharge, defamation, or any other state law claim against Defendants, such state law claims could be heard by this Court only through the exercise of supplemental jurisdiction, which allows federal courts to hear and decide state

---

[9]Defendants also argue that SSFD and CDA are not proper defendants in this action for various reasons.  [Doc. 35-1 at 9–11.]  Because the Court recommends summary judgment based on an analysis of Plaintiff's claims, it declines to address these arguments.

law claims along with federal law claims.[10]   Federal courts are permitted to decline

supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)(3), however, if "the district court

has dismissed all claims over which it has original jurisdiction."   In this instance, the Court

recommends that the district judge decline to exercise supplemental jurisdiction in this case.

## RECOMMENDATION

Wherefore, based upon the foregoing, the Court recommends that Defendants'

motion for summary judgment be GRANTED.

IT IS SO RECOMMENDED.


March 30, 2016 `                                                S/Jacquelyn D. Austin
Greenville, South Carolina                              United States Magistrate Judge

---

[10]A civil action for Plaintiff's state law claims could be cognizable in this Court under the diversity statute, if that statute's requirements are satisfied. However, this Court does not have diversity jurisdiction in this case because Plaintiff and Defendants SSFD and CDA are all citizens of the State of South Carolina, which defeats the required complete diversity of parties.   *See* 28 U.S.C. § 1332.