## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Stephanie Harvey, ) | Civil Action No.: 8:14-cv-01966-JMC |
| ) | |
| Plaintiff, ) | |
| v. ) | |
| ) | **ORDER AND OPINION** |
| Saluda Smiles Family Dentistry, ) | |
| Carolina Dental Alliance, and VSM ) | |
| Management, LLC, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

This matter is before the court on the Motion for Summary Judgment (ECF No. 35) filed by Defendants Saluda Smiles Family Dentistry, Carolina Dental Alliance, and VSM Management, LLC (collectively "Defendants"). In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02, D.S.C., the matter was referred to United States Magistrate Judge Jacquelyn Austin for a Report and Recommendation. On March 30, 2016, the Magistrate Judge issued a Report and Recommendation ("Report") recommending that the court grant Defendants' Motion for Summary Judgment. (ECF No. 43.) For the reasons stated herein, the court **GRANTS IN PART AND REJECTS IN PART** the Magistrate Judge's Report and Recommendation. (ECF No. 43.) Therefore, Defendants' Motion for Summary Judgment (ECF No. 35) is **GRANTED IN PART** and **DENIED IN PART.**

### I.    RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Stephanie Harvey ("Plaintiff") began working for Saluda Smiles Family Dentistry, P.A. ("Saluda Smiles") in 2005. (ECF No. 43 at 2.) In January of 2012, Carolina Dental Alliance purchased Saluda Smiles, and in July of 2012, Dr. Seung Kyu Choi ("Dr. Choi") became the practice's dentist. (*Id.*) Later that year, VSM Management, LLC ("VSM") purchased the practice. (*Id.*)

1

Plaintiff alleges that she and Dr. Choi had a difficult working relationship. Specifically, Plaintiff reported that she felt "nitpicked" and singled-out by Dr. Choi, and felt that he was trying to find something wrong with her work. (ECF No. 37-5 at 20, 24.) On one occasion, Dr. Choi dropped an instrument on the floor, and Plaintiff jokingly made a comment about it; in response, Dr. Choi reacted in a condescending manner and reprimanded her in front of the patient. (ECF No. 37-5 at 18.) Plaintiff and Dr. Choi discussed the event with Amanda Hayes ("Hayes"), the office manager, and an informal incident report was created documenting the event. (*Id.*) On another occasion, Dr. Choi addressed Plaintiff about her organization of trays and the necessity to keep her area clean. (ECF No. 43 at 2.) Plaintiff, once again, went to Hayes and created an informal incident report documenting that Plaintiff felt "nitpicked" by Dr. Choi and that Dr. Choi felt that Plaintiff was rude. (*Id.*)

In early 2013, Jennifer Mitchell ("Mitchell") became the operations manager for VSM. Mitchell was responsible for visiting the various offices owned by VSM and addressing concerns of their administrative management. (*Id.*) Hayes informed Mitchell that the office employees, including Plaintiff, were concerned about Dr. Choi because he made mistakes and had difficulty communicating with the staff. (*Id.*) At one point, Hayes sought Mitchell's advice on improving office morale and relayed that the employees in the office were "at their wits end with [Dr. Choi]," so they would not want to hear that it would be their job to boost his confidence and make him happy. (ECF No. 37-5 at 47-48.) In further attempts to remedy Plaintiff's specific situation, Mitchell reports that she had a conversation with Plaintiff regarding her attitude toward Dr. Choi. (ECF No. 43 at 3.)

In February of 2013, Plaintiff filed a complaint against Dr. Choi with the Dental Board at the South Carolina Department of Labor, Licensing, and Regulation ("LLR"). (*Id.*)

2

Subsequently, on April 24, 2013, Plaintiff filed a Charge of Discrimination ("Charge") with the South Carolina Human Affairs Commission ("SCHAC") and the United States Equal Employment Opportunity Commission ("EEOC"). (*Id.*) On April 25, 2013, Plaintiff was terminated during a meeting with Hayes and Mitchell. (*Id.*)

On May 16, 2014, Plaintiff filed this action alleging race discrimination, hostile work environment, and retaliation claims pursuant to Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), and pendent state law claims of public policy discharge and defamation. (ECF No. 1.) On November 16, 2015, Defendants filed a Motion for Summary Judgment. (ECF No. 35.) Plaintiff filed a Response opposing the Motion on December 3, 2015 (ECF No. 36), along with additional attachments (ECF No. 37.) The Magistrate Judge issued her Report on March 30, 2016. (ECF No. 43.) Plaintiff was advised of her right to file objections to the Report. (ECF No. 43). Plaintiff filed Objections to the Report and Recommendation of Magistrate Judge ("Objections") on April 19, 2016. (ECF No. 44.) Subsequently, Defendants filed a Reply to Plaintiff's Objections. (ECF No. 45.)

## II.     JURISDICTION

This court has jurisdiction over Plaintiff's Title VII claim via 28 U.S.C. § 1331, as it arises under a law of the United States, and also via 42 U.S.C. § 2000e–5(f)(3), which empowers district courts to hear claims "brought under" Title VII.  Additionally, the court may properly hear Plaintiff's state law claims based on supplemental jurisdiction since they are "so related to claims in the action within such original jurisdiction that . . . it form[s] part of the same case or controversy . . . ."   28 U.S.C. § 1367(a).

## III.     LEGAL STANDARD

The Magistrate Judge's Report is made in accordance with 28 U.S.C. § 636(b)(1) and

3

Local Civil Rule 73.02 for the District of South Carolina. The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight. The responsibility to make a final determination remains with this court. *See Matthews v. Weber*, 423 U.S. 261, 270-71 (1976). This court is charged with making a *de novo* determination of those portions of the Report to which specific objections are made, and the court may accept, reject, or modify, in whole or in part, the Magistrate Judge's recommendation, or recommit the matter with instructions. See 28 U.S.C. § 636(b)(1). Objections to a Report and Recommendation must specifically identify portions of the Report and the basis for those objections. Fed. R. Civ. P. 72(b). In this case, Plaintiff timely filed objections to the Report, which are addressed below. (ECF No. 44.)

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248-49 (1986). A genuine question of material fact exists where, after reviewing the record as a whole, the court finds that a reasonable jury could return a verdict for the non-moving party. *Newport News Holdings Corp. v. Virtual City Vision,* 650 F.3d 423, 434 (4th Cir. 2011).

In ruling on a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Perini Corp. v. Perini Constr., Inc.,* 915 F.2d 121, 12324 (4th Cir. 1990). The non-moving party may not oppose a motion for summary judgment with mere allegations or denials of the movant's pleading, but instead must "set forth specific facts" demonstrating a genuine issue for trial. Fed. R. Civ. P. 56(e); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986); *Shealy v. Winston,* 929 F.2d 1009, 1012 (4th Cir. 1991). All that is required is that "sufficient evidence

supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson,* 477 U.S. at 249. "Mere unsupported speculation . . . is not enough to defeat a summary judgment motion." *Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.,* 53 F.3d 55, 62 (4th Cir. 1995).

## IV.    ANALYSIS

In her Objections, Plaintiff identifies four areas of the Magistrate Judge's Report to which she objects. First, Plaintiff asserts that the Magistrate Judge erred in finding that Plaintiff failed to exhaust her administrative remedies regarding her race discrimination claim. (ECF No. 44 at 23.) Second, Plaintiff contends that the Magistrate Judge erred in determining that Plaintiff could not establish a causal connection to support her retaliation claim. (*Id.* at 3-5.) Third, Plaintiff asserts that the Magistrate Judge erred when she failed to consider all of the evidence Plaintiff presented to support her claim that Defendants' articulated reason for terminating Plaintiff was a pretext for retaliation. (*Id.* at 5-6.) Finally, Plaintiff contends that the Magistrate Judge erred in finding that Plaintiff failed to establish a claim for hostile work environment. (*Id.* at 6.) Because Plaintiff has filed specific objections, the court will conduct a de novo review of the Report as to the Magistrate Judge's conclusions regarding the Title VII claims. As to Plaintiff's state law claims, the court has reviewed the Report and finds that it is necessary to conduct a de novo review of those claims as well.

### A. Count 1–Racial Discrimination

First, Plaintiff asserts a claim for racial discrimination pursuant to Title VII.   (ECF No. 1.) Plaintiff alleges that she was subjected to "disparate treatment with other similarly situated white employees by being treated disparately in all aspects of employment at [Saluda Smiles], being harassed and humiliated by [Dr. Choi], a Korean male, and being terminated after Plaintiff requested an investigation by LLR." (ECF No. 1 at 4-5 at ¶ 23.) The Magistrate Judge determined

5

that to the extent Plaintiff was alleging a Title VII claim for disparate treatment based on an adverse employment action of termination, Plaintiff had not properly exhausted her administrative remedies. (ECF No. 43 at 5-10.) Further, the Magistrate Judge concluded that to the extent Plaintiff intended to assert a claim for hostile work environment, Plaintiff failed to present evidence to support a prima facie case.   (ECF No. 43 at 10-12.)

### 1. Disparate Treatment Claim

Plaintiff asserts that the Magistrate Judge erred in determining that Plaintiff did not exhaust her administrative remedies for a disparate treatment claim prior to filing this action. In order to establish a claim for disparate treatment under Title VII, Plaintiff must establish a prima facie case of discrimination. In order to make a prima facie case, Plaintiff must demonstrate that "(1) she is a member of a protected class; (2) she was qualified for the job and performed it satisfactorily; (3) she suffered an adverse employment action; and (4) she was treated differently than similarly situated employees outside of the protected class." *Brockman v. Snow*, 217 F. App'x 201, 205 (4th Cir. 2007). "An adverse employment action includes any retaliatory action if, but only if that act adversely affected the terms, conditions, or benefits of his employment." *Thompson v. Potomac Electric Power Co.*, 312 F.3d 645, 650-51 (4th Cir. 2002) (internal quotations and citation omitted).

Here, Plaintiff asserts that based on her race as a black female, she was treated unfairly, and that after filing an employment claim with the LLR, she was terminated. Unfair treatment, even if seemingly based on race, is not actionable unless the instances of unfair treatment created a hostile work environment or resulted in an adverse employment action.   For an employment action to be considered adverse, it must affect the terms, conditions, or benefits of employment. The evidence demonstrates that Plaintiff engaged in multiple discussions with Mitchell regarding Plaintiff's

6

attitude towards Dr. Choi. (ECF No. 35-4 at 3-4 ¶¶ 10-14.) Thus, to the extent that Plaintiff alleges that she was required to engage in disciplinary discussions regarding her perceived negative attitude towards Dr. Choi yet her white counterparts were not, those discussions alone do not constitute an adverse employment action unless they resulted in a reduction in pay, benefits, or employment status. *See Thompson*, 312 F.3d at 651-52. To the extent that Plaintiff alleges those discussions ultimately led to her termination, a termination is considered an adverse employment action. However, Defendant contends that Plaintiff cannot maintain a claim for disparate treatment based on an adverse employment action of termination because she did not include that allegation in her Charge. This court agrees.

Before filing suit, a plaintiff must exhaust her administrative remedies by filing a charge with the EEOC. *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 247 (4th Cir. 2000). The contents included in the charge define the scope of a plaintiff's right to a federal lawsuit. *Jones v. Calvert Group, Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009). "Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit." *Evans v. Techs. Application & Serv. Co.*, 80 F.3d 954, 963 (4th Cir. 1996). Typically, a claim will be barred if the "administrative charge alleges one type of discrimination—such as discriminatory failure to promote—and the claim encompasses another type—such as discrimination in pay and benefits." *Chacko v. Patuxent Inst.*, 429 F.3d 505, 509 (4th Cir. 2005). Further, if the "factual foundation in the administrative charge is too vague to support a claim that is later presented in subsequent litigation, that claim will also be procedurally barred." *Id*.

In her Charge, Plaintiff asserted that she had "been subjected to harassment from July 20, 2012 through March 21, 2013, and continuing by [Dr. Choi who treated] similarly situated white

7

employees more favorably." (ECF No. 35-2 at 47.) She indicated that she believed the disparate treatment was based on her race. (*Id.*) In the Charge, Plaintiff only referred to vague allegations of harassment, and did not cite any adverse employment actions taken against her. Plaintiff now alleges that she was terminated because she requested an investigation by the LLR into dental procedures by Dr. Choi. (ECF No. 1 at 4-5 ¶ 23.) Curiously, Plaintiff does not allege that the termination was the result of the alleged harassment or disparate treatment. At any rate, Plaintiff alleges that although she failed to amend her Charge to reflect that she had been terminated, she checked the "continuing action" box on the Charge form, so as a result, Count 1 should not be dismissed because a reasonable investigation of the race discrimination claim in the Charge would have revealed that she was terminated.

Based on a comparison of the allegations listed in the Charge and those in the Complaint, it is not clear that a reasonable investigation of the allegations in the Charge would have led to the discovery that Plaintiff was terminated due to her request for an investigation. Further, even if Plaintiff is alleging that she was terminated based on her race, the case law does not support Plaintiff's allegation that she can now maintain her suit based on an adverse employment action not listed in the Charge. The purpose of the Charge is to notify the employer of the alleged discrimination and allow the employer the opportunity to investigate and resolve the allegations. *Chacko*, 429 F.3d at 510. Plaintiff's only allegation in the Charge was that she was harassed and treated differently by Dr. Choi based on her race. She had requested an investigation by the LLR almost two months prior to filing the Charge, and did not indicate that the filing of the investigatory request compounded any of the alleged racial discrimination problems she was experiencing. Plaintiff also never amended her Charge to indicate that she was fired because of her race or the filing of the investigatory request. Thus, Defendants were not properly put on notice

of the various grounds forming the bases of Plaintiff's claim for race discrimination.

It appears that Plaintiff would ask this court to conflate the analysis for a claim of disparate treatment based on race and for retaliation under Title VII.  For a claim of retaliation, Plaintiff would not have to amend the Charge to reflect that she was terminated as a result of filing the Charge. (*See supra* III. B.) But, the basis for a claim of disparate treatment is that Plaintiff suffered an adverse employment action because of her race, not because she exercised her right to have the alleged racial discrimination investigated. Accordingly, because Plaintiff did not allege any actions that constitute an adverse employment action in her Charge, Plaintiff cannot maintain a claim for disparate treatment pursuant to Title VII. To the extent that Plaintiff now asserts that the adverse employment action she experienced was the termination on April 25, 2013, the court finds that Plaintiff did not exhaust her administrative remedies because she did not amend her Charge to reflect that allegation. On that basis, summary judgment is not appropriate because the court does not have subject matter jurisdiction over the claim. *See Jones*, 551 F.3d at 300. Thus, to the extent that Count 1 is based on an allegation of racial discrimination that resulted in the termination of Plaintiff, the Count is dismissed.

**2. Hostile Work Environment**

Plaintiff asserts that the Magistrate Judge erred in finding that Plaintiff failed to establish a claim for hostile work environment. Presumably, the Magistrate Judge determined that the allegations in Count 1 could also conceivably support a claim for hostile work environment (*see* ECF No. 43 at 10, n.5), but that ultimately, Plaintiff has failed to establish a prima facie case of that claim. (*Id.* at 10-12.)

In order to establish a claim for hostile work environment, Plaintiff must demonstrate that: (1) she was harassed because of her race; (2) the harassment was unwelcome; (3) the harassment

was sufficiently severe or pervasive to create an abusive working environment; and (4) some basis exists for imputing liability to the employer. *Gilliam v. C. Dep't of Juvenile Justice*, 474 F.3d 134, 142 (4th Cir. 2007).   To demonstrate the "severe or pervasive" element, Plaintiff "must show that he subjectively perceived the environment to be abusive," and "must demonstrate that the conduct was such that a reasonable person in the plaintiff's position would have found the environment objectively hostile or abusive." *EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008) (internal citations and quotations omitted). When determining whether the conduct was objectively "severe or pervasive" courts look at the totality of the circumstances, which includes considering the frequency and severity of the conduct, as well as whether it unreasonably interferes with the work performance, is humiliating, or physically threatening. *Id.* In order for allegedly harassing conduct to be actionable, it "must be so extreme as to amount to a change in the terms and conditions of employment." *Id.* (Internal quotation and citation omitted). Isolated incidents that are not extremely serious and offhand comments do not meet this standard. *Id.* Further, claims based on "rude treatment . . ., callous behavior by one's superiors, or a routine difference of opinion and personality conflict with one's supervisor are not actionable under Title VII." *Id.* (Internal quotations and citations omitted). The court's task on summary judgment is to find "instances where the environment was pervaded with discriminatory conduct aimed to humiliate, ridicule, or intimidate," thereby creating an abusive atmosphere.   *Id.*

Considering Plaintiff's allegations and the totality of the circumstances as demonstrated by the evidence presented, the court cannot conclude that Plaintiff experienced "severe or pervasive" harassment such that it amounted to a change in the terms and conditions of her employment. The court finds that there are only two documented incidences of a specific conflict between Dr. Choi and Plaintiff. (*See* ECF No. 37-1 at 33, 52.) In the first incident, Dr. Choi dropped an instrument

and Plaintiff jokingly made a statement about him throwing things, which resulted in Dr. Choi chastising Plaintiff in front of a patient. In the second incident, Dr. Choi complained to Hayes that Plaintiff did not keep her area clean, and Plaintiff found this to be further evidence of Dr. Choi's "nitpicking." This court acknowledges that Mitchell admitted that she was aware of an ongoing friction between Dr. Choi and Plaintiff outside of the documented incidents. (ECF No. 37-4 at 64.) Despite this, there is no indication that Dr. Choi's conduct was extremely serious, intended to ridicule, or intimidate Plaintiff. It appears to this court that Dr. Choi and Plaintiff merely had a personality conflict that neither of them was able to resolve. Further, Plaintiff has presented no evidence that Dr. Choi was rude to her because of her race, though it appears that Plaintiff would like this court to draw that inference based on assertions that she was the only black employee and Dr. Choi was not rude to anyone else in the office. Regardless, Plaintiff has failed to satisfy the "severe and pervasive" element of the hostile work environment claim, and as such, the Magistrate Judge correctly recommended that Defendants are entitled to summary judgment as to this issue.

### B. Count 2–Retaliation

Plaintiff alleges that Defendants unlawfully terminated her employment in violation of Title VII after she complained about the unequal treatment she experienced. (ECF No. 1 at 5 ¶ 26.) Title VII prohibits employers from interfering with an employee's efforts to secure enforcement of Title VII's guarantees. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S 53, 63 (2006). Thus, employers are prohibited from taking discriminatory action towards a plaintiff who either opposed an unlawful employment practice or participated in a Title VII proceeding. 42 U.S.C. § 2000d-3(a). A plaintiff may establish a prima facie case of retaliation by demonstrating "(1) she engaged in a protected activity, (2) the employer acted adversely against her, and (3) there was a causal connection between the protected activity and the asserted adverse action." *Hoyle v.*

*Freightliner*, *LLC*, 650 F.3d 321, 337 (4th Cir. 2011).   Once an employee has established a prima facie case of retaliation, the employer has the burden to demonstrate a legitimate, nondiscriminatory reason for the adverse employment action. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). After the employer articulates a legitimate, nondiscriminatory reason for the action, the burden shifts back to the employee to show that the articulated reason was actually a pretext for discrimination.   *Id.* at 804.

### 1. Prima Facie Case

It is undisputed that Plaintiff engaged in a protected activity and that she experienced an adverse employment action.   The issue before the court is whether Plaintiff properly established a causal connection between the protected activity and the adverse action. Plaintiff asserts that the Magistrate Judge improperly concluded that she could not demonstrate a causal connection between her termination and the filing of the Charge. To prove a causal connection, Plaintiff must demonstrate that Defendants took action "because the plaintiff engaged in a protected activity," *Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 218 (4th Cir. 2007), which necessarily requires Defendants to have been aware of Plaintiff's participation in a protected activity.

Here, Plaintiff filed a Complaint with the SCHAC on March 13, 2013. (ECF No. 35-2 at 46.) The official Charge was filed on April 24, 2013. (*Id.* at 47.) Though the documents presented are in conflict, it appears that Plaintiff was either terminated on April 24, 2013, or April 25, 2013. Plaintiff contends that Defendants were aware that she engaged in a protected activity because she told Hayes, on March 18, 2016, that she filed a Charge with the EEOC. (ECF No. 37-1 at 26.) Hayes contends that she was never told about Plaintiff's intention to file a Charge or that Plaintiff felt she was being mistreated due to her race. (ECF No. 35-5 at 5 ¶ 15.) Further, it appears from the record that Mitchell and Mark Lakis ("Lakis"), the Chief Executive Officer for VSM, were the

12

persons who had the authority, and ultimately decided, to terminate Plaintiff. (ECF Nos. 35-3, 354.) Both Lakis and Mitchell averred that they were not made aware of the Charge until after Plaintiff had been terminated. (ECF Nos. 35-4 ¶ 18, 35-3 ¶ 18.)

Essentially, Plaintiff asserts that regardless of when the EEOC sent official documents to Defendants, Defendants were aware that she filed the Charge because she told Hayes and presumably, Hayes told Mitchell. Though the Magistrate Judge determined that Plaintiff cannot definitively establish that Mitchell and Lakis knew about the Complaint, the court finds that it would be difficult for Plaintiff to discover direct evidence of such knowledge if Mitchell and Lakis avoided creating a paper trail. *See Hernandez v. Spacelabs Medical, Inc.*, 343 F.3d 1107, 1114–1115 (9th Cir. 2003) (explaining that it is "frequently impossible for a plaintiff . . . to discover direct evidence contradicting someone's contention that he did not know something") or (explaining that "what-did-he-know-and-when-did-he-know-it questions are often difficult to answer, and for that reason are often inappropriate for resolution on summary judgment"). Further, it strikes the court as odd that there is direct evidence of Mitchell's process in determining whether to fire Jessica Smith ("Smith"), a white employee who was reprimanded because of her attitude toward Dr. Choi, but no evidence regarding Mitchell's deliberative process toward Plaintiff.

On April 4, 2013, it was reported that Smith was disrespectful to Dr. Choi in front of patients. Mitchell reports that she spoke with Smith and informed her that if the behavior occurred again, she would be terminated immediately. (ECF No. 37-4 at 65.) As a result of that incident, Smith signed a written warning document. (*Id.*) On April 14, 2013, Mitchell sent an e-mail to Lakis noting that Smith's attitude had changed, but that she had a strategy to help improve Plaintiff's attitude, which she would explain over the phone or in person. (ECF No. 37-8 at 11.) On April 22, 2013, Mitchell sent another e-mail to Lakis indicating that she had discussed different

options with Plaintiff and Smith. (*Id.* at 14.) At that time, it appears that she was considering moving Plaintiff to a position at the front desk, and considering either firing Smith or giving her one more chance.[1] (*Id.*) Reportedly, on the morning of April 24, 2013, Mitchell asserts that management made the decision to terminate Plaintiff due to her conduct. (ECF No. 37-4 at 65.) However, unlike Smith, there is no indication that Plaintiff was ever given a written warning,[2] nor is there any indication prior to April 24, 2013, that Defendants were considering terminating Plaintiff even though Mitchell allegedly had a conversation warning Plaintiff on the same day Smith signed her written warning document (ECF No. 37-4 at 48). Additionally, there is no evidence—not even in Defendants' official response to the SCHAC, (*see* ECF No. 37-7)—of an intervening incident between April 22, 2013, and April 24, 2013, that might have caused Defendants to decide that it was better to terminate Plaintiff than move her to the front desk. Based on the lack of evidence documenting Defendants' plans to terminate Plaintiff compared to the documentation regarding the possible termination of Smith as well as the timing of Plaintiff's firing, it reasonably appears to this court that Defendants' motives for terminating Plaintiff were questionable enough for Plaintiff's claim to survive summary judgment. Accordingly, the court finds that there is a genuine dispute of material fact as to whether there is a casual connection between Defendants' alleged knowledge that Plaintiff filed a Charge with the EEOC and Defendants' alleged retaliation to the filing of the Charge by terminating Plaintiff.

**2. Pretext**

The Magistrate Judge concluded that even if Plaintiff had presented evidence to establish a

---

[1] Ultimately, it appears that Smith was terminated, but it is unclear when. (ECF No. 37-4 at 42-43.)
[2] In her deposition, Mitchell claims that she believes she gave Plaintiff a written warning document in mid-April, but that Plaintiff would not sign it. (ECF No. 37-4 at 49.) However, in an employment summary analysis, Mitchell made no mention of providing Plaintiff with such a document. (*Id.* at 65.)

prima facie case of retaliation, she could not present any evidence of pretext after Defendants articulated a legitimate, non-retaliatory explanation for terminating Plaintiff's employment. (ECF No. 43 at 16.) Plaintiff asserts that the Magistrate Judge failed to properly consider all of the evidence presented by Plaintiff.

Defendants assert that Plaintiff was terminated because she failed to make an effort to improve her attitude and relationship with Dr. Choi. In the response to the SCHAC, Defendants indicated that Plaintiff was terminated due to issues "related to performance, a bad attitude and insubordination." (ECF No. 37-7 at 7.) Plaintiff argues that Defendants' proffered non-retaliatory reasons are pretextual because Defendants can offer no support regarding Plaintiff's attitude problem, insubordination, or performance after March 6, 2013.

Further, Plaintiff was allegedly "indifferent and disrespectful towards senior management and the employees of Saluda Smiles," unwilling to build an atmosphere of teamwork," and that she had disputes with Jennifer Enlow, the dental hygienist. (ECF No. 37-7 at 3-4.) However, on March 11, 2013, Jennifer Enlow drafted a recommendation letter for Plaintiff—a co-worker with whom she allegedly did not get along—indicating that Plaintiff is "respected by her coworkers for her willingness to help anyone, anytime she can," and that she was "instrumental in helping new employees and patients to feel comfortable." (ECF No. 37-6 at 11.) Moreover, it is unclear which member of senior management Plaintiff was allegedly disrespectful towards because Mitchell has not testified that Plaintiff was disrespectful to her. Hayes testified that she and Plaintiff had a good working relationship and that she often confided in Plaintiff, and there is no testimony that Plaintiff ever had any interaction with Lakis. There are only three documented occasions in which Plaintiff was ever allegedly disrespectful towards Dr. Choi, and the last of those incidents occurred on March 6, 2013. Mitchell e-mailed Lakis on April 14, 2013, informing him that Plaintiff still had

an attitude, but on April 22, 2013, Mitchell e-mailed Lakis that she wanted to discuss moving Plaintiff to front desk duties with no mention of terminating Plaintiff–although there was mention of firing another employee. Yet, Lakis averred that the decision to terminate Plaintiff was made during a meeting on April 23, 2013.

Based on the dearth of documentation regarding Plaintiff's failure to improve her attitude, job performance, or desire to work as a member of a team, Plaintiff has "rendered the employer's reason so questionable as to raise an inference of deceit." *Foster v. Univ. of Maryland-Eastern Shore*, 787 F.3d 243, 253-54 (4th Cir. 2015) (affirming district court's denial of summary judgment where the plaintiff was able to show there was no documentation of her alleged inflexibility and that her work had been praised before she made a sexual harassment complaint); *See also Jacobs v. N.C. Admin. Office of the Cts.*, 780 F.3d 562, 566 (4th Cir. 2015) (reversing district court's granting of summary judgment where the defendant produced no documentary evidence corroborating allegations of disciplinary or performance issues as justification for firing the plaintiff.) Accordingly, the court finds that summary judgment is not appropriate as to Plaintiff's claim for retaliation.

**C. State Law Claims**

Finally, Plaintiff asserts that the Magistrate Judge erred by failing to consider her state law claims. The Magistrate Judge determined that it was proper for this court to decline to exercise supplemental jurisdiction over Plaintiff's state law claims because the Magistrate Judge recommended that summary judgment be granted as to all of Plaintiff's federal claims.

Pursuant to 28 U.S.C. § 1367(c)(3), a court can decline to exercise supplemental jurisdiction over state law claims if the court has dismissed all claims for which it has original jurisdiction. Though the court has discretion to dismiss state law claims after granting summary

16

judgment as to the federal claims, it may be an abuse of discretion if the state statute of limitations expired prior to the dismissal of the federal claim. *Ketema v. Midwest Stamping, Inc.*, 180 F. App'x 427 (4th Cir. 2006). Because the statute of limitations for a defamation claim is two years, *see* S.C. Code Ann. § 15-3-550 (1976), this court finds that it would be error to dismiss Plaintiff's state law claims as the statute of limitations has already expired. Thus, the court, exercising its supplemental jurisdiction, has conducted a *de novo* review of the record in order to consider whether Defendant is entitled to summary judgment as to Plaintiff's state law claims.

### 1. Count 3–Public Policy Discharge

Plaintiff asserts that Defendants terminated her employment in violation of the "public policy discharge exception" to the at-will employment doctrine. Plaintiff alleges that Defendants violated public policy specific to the operation of a dental practice, that she filed a complaint with the LLR regarding these violations, and that she was wrongfully terminated as a result. (ECF No. 1 at 6.)

Pursuant to the public policy discharge exception, Plaintiff may maintain a cause of action in tort for wrongful termination if "(1) the employer [required her] to violate the law, or (the reason for [her] termination itself is a violation of criminal law." *McNeil v. South Carolina Dept. of Corrections*, 743 S.E.2d 843, 846 (S.C. Ct. App. 2013). However, the public policy exception has not been extended beyond those two situations. *Id.* at 846. While courts in South Carolina have acknowledged that "an at-will employee may have a cause of action for wrongful termination even if the discharge itself did not violate criminal law or the employer did not require the employee to violate the law," there are no new specifically recognized scenarios where the public policy discharge exception might be applicable. *Donevant v. Town of Surfside Beach*, 778 S.E.2d 320, 326-27 (S.C. Ct. App. 2015).

Moreover, the appellate courts of South Carolina have not yet determined whether the exception applies when an employee is terminated in retaliation for reporting an employer's violation of public policy. *See Keiger v. Citgo, Coastal Petroleum, Inc.*, 482 S.E.2d 792 (S.C. Ct. App. 1997) (reversing grant of motion to dismiss on public policy discharge claim where employee was terminated after invoking her rights under the South Carolina Payment of Wages Act because the action was a violation of a clear mandate of public policy); *Garner v. Morrison Knudsen Corp.*, 456 S.E.2d 907 (S.C. 1995) (reversing grant of motion to dismiss where employee was terminated in retaliation for reporting about radioactive contamination and unsafe working conditions at a nuclear facility); *but see Taghivand v. Rite Aid Corp.*, 768 S.E.2d 385 (S.C. 2015) (declining to extend the public policy discharge exception where employee was discharged after reporting to the police that a crime, not involving his employer, occurred at his place of employment). Therefore, Defendants are entitled to Summary Judgment as to Count 3.

**2. Count 4–Defamation**

Plaintiff asserts that, following her termination, Defendants and their employees made statements in the presence of others that Plaintiff was terminated for unprofessional behavior and incompetence. (ECF No. 1 at 7 ¶ 36.) To maintain a claim for defamation, Plaintiff must establish: "(1) a false and defamatory statement was made; (2) the unprivileged statement was published to a third party; (3) the publisher was at fault; and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication." *Fountain v. First Reliance Bank*, 730 S.E.2d 305, 309 (S.C. 2012). Based on the review of the record, the court finds that Plaintiff cannot establish that information regarding her termination was released to a third party other than the EEOC—the entity investigating her complaint of racial discrimination. (ECF No. 35-2 at 30.) Jennifer Enlow—a dental hygienist in the office—testified that she was never

made aware of the reasons for Plaintiff's termination because it was never discussed at work. (ECF No. 37-6 at 1.) Plaintiff has not provided any further evidence other than bare allegations in her Complaint to support the publication element of the defamation claim. Accordingly, Defendants are entitled to summary judgment as to Count 4.

## V.     CONCLUSION

For the reasons stated herein, the court hereby **GRANTS IN PART AND DENIES IN PART** Defendants' Motion for Summary Judgment. (ECF No. 35.) Specifically, the court **GRANTS** the Motion for Summary Judgment as to Plaintiff's claims for hostile work environment, public policy discharge, and defamation. However, the court **DENIES** the Motion for Summary Judgment as to Plaintiff's claim for retaliation. As to Plaintiff's claim for race discrimination, the court **DISMISSES** the cause of action based on the lack of subject matter jurisdiction over it. As a result of the aforementioned, the court **ACCEPTS IN PART AND REJECTS IN PART** the Magistrate Judge's Report and Recommendation (ECF No. 43) and incorporates it herein by reference.

**IT IS SO ORDERED.**

*J. Michelle Childs*

United States District Judge

September 28, 2016
Columbia, South Carolina