# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Stephanie Harvey, ) | Civil Action No. 8:14-cv-01966-JMC |
| ) | |
| Plaintiff, ) | |
| v. ) | |
| ) | **ORDER AND OPINION** |
| Saluda Smiles Family Dentistry, Carolina ) | |
| Dental Alliance, and VSM Management, ) | |
| LLC, ) | |
| ) | |
| Defendants. ) | |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ ) | |

Plaintiff Stephanie Harvey ("Harvey" or "Plaintiff") filed this action against Defendants Saluda Smiles Family Dentistry ("SSFD"), Carolina Dental Alliance ("CDA"), and VSM Management, LLC ("VML"), (collectively "Defendants") alleging that she was subjected to discrimination, retaliation, and a hostile work environment in violation of the Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e–2000e17. (ECF No. 1 at 4 ¶ 22–5 ¶ 27.) Plaintiff also alleged that she was discharged in violation of public policy and was defamed. (Id. at 6 ¶ 28–7 ¶ 38.)

This matter is before the court on Defendants' Motion for Reconsideration of the court's Order entered on September 28, 2016 (the "September Order"), pursuant to Rule 54(b) of the Federal Rules of Civil Procedure. (ECF No. 59.) Specifically, Defendants seek reconsideration of the court's decision in the September Order (ECF No. 53) to deny Defendants' Motion for Summary Judgment (ECF No. 35) as to Plaintiff's claim for retaliation as to her termination. (ECF No. 59 at 11–16 & 19.) Plaintiff opposes Defendants' Motion for Reconsideration asserting that the court "correctly denied summary judgment as to the Plaintiff's Title VII retaliation claim." (ECF No. 61 at 8.) For the reasons stated below, the court **GRANTS**

Defendants' Motion for Reconsideration.

## I. BACKGROUND FACTS RELEVANT TO PENDING MOTION[1]

Plaintiff began working for the entity that became SSFD in 2005. (ECF No. 37-1 at 2:63:18–22.) In January 2012, CDA purchased SSFD and then sold it to VML in late December 2012.[2] (ECF Nos. 35-4 at 1 ¶ 2, 2 ¶ 4 & 35-5 at 2 ¶ 3.) When VML acquired the assets of SSFD, its employees became employees of VML. (ECF No. 35-3 at 2 ¶ 3.) SSFD had employed less than 10 employees at all times prior to the sale. (ECF Nos. 35-5 at 1 ¶ 2 & 35-4 at 1 ¶ 3.) Under VML's ownership, Operations Manager Jennifer Mitchell ("Mitchell") was responsible for SSFD's "day to day management of administrative issues and personnel disputes." (ECF No. 35-3 at 3 ¶ 9.) Mitchell reported directly to Mark Lakis ("Lakis"), VML's Chief Executive Officer. (ECF No. 35-4 at 2 ¶ 6.)

In July of 2012, CDA hired Dr. Seung Kyu Choi ("Dr. Choi") as the dentist for SSFD. (ECF No. 37-3 at 4:12:20–23.) Staff members of SSFD expressed their concerns about Dr. Choi to Office Manager Amanda Hayes ("Hayes") because Dr. Choi "was inexperienced, did not seem to know what he was doing, was unable to communicate effectively, and was making mistakes." (ECF No. 35-5 at 2 ¶ 7.) "Plaintiff alleges that she and Dr. Choi had a difficult working relationship." (ECF No. 53 at 2.) In or around late 2012 or early 2013, Plaintiff filed a complaint about Dr. Choi with the South Carolina Department of Labor, Licensing and Regulation ("LLR") regarding patient care concerns. (ECF No. 37-1 at 16:131:8–18:136:19.) Plaintiff asserts that only she and Hayes knew that Plaintiff was responsible for the LLR

---

[1] The September Order contains a thorough recitation of the relevant factual and procedural background of the matter and is incorporated herein by reference. (See ECF No. 53 at 1–3.)

[2] CDA was "a name referring to a collective group of dental practices" but "each dental practice was its own separate business, and the staff at a particular location were employed by that business." (ECF No. 35-4 at 1 ¶ 3.) "For instance, the staff who worked at the Saluda practice were employed by Saluda Dental Group, LLC." (Id.)

complaint.  (Id. at 18:136:6–19.)  Hayes admits that she became aware "that the LLR was investigating Dr. Choi," but Hayes denies either knowing that Plaintiff was responsible for the LLR complaint or telling anyone that Plaintiff was said complainant.  (ECF Nos. 35-5 at 4 ¶ 12 & 37-5 at 21:41:13–21.)  Mitchell and Lakis deny that they were aware during Plaintiff's employment that she had made a complaint to the LLR.  (See ECF Nos. 35-3 at 6 ¶ 19 & 35-4 at 5 ¶ 19.)

On or about April 18, 2013, Plaintiff alleges that she told Hayes that she had filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC").  Plaintiff admits that she asked Hayes to not tell anyone about the Charge and that Hayes was the only person that knew about it.  (ECF No. 37-1 at 26:170:6–14 & 28:178:5–6.)  Hayes denies that she was told about Plaintiff's Charge on April 18, 2013.  (ECF No. 35-5 at 7 ¶ 24.)  Thereafter, on April 24, 2013, Plaintiff signed the document purporting to be her Charge (and filed it sometime thereafter with the EEOC and the South Carolina Human Affairs Commission ("SCHAC")) asserting as follows:

> I have been subjected to harassment from July 20, 2012 through March 21, 2013, and continuing, by Dr. Seung Kyu Choi.  Dr. Choi treats a similarly situated white employee more favorably.
>
> I, therefore, believe that I have been discriminated against on the basis of my race (black) in violation of the SC Human Affairs Law, as amended and Title VII of the Civil Rights Act of 1964, as amended.

(ECF No. 35-2 at 47.[3])

Plaintiff was terminated on April 25, 2013.  (ECF No. 37-1 at 23:159:18–24:160:2.)  At the time of her termination, VML was Plaintiff's employer.  (ECF No. 35-5 at 2 ¶ 3.)  Hayes, Lakis, and Mitchell all assert that they became aware of Plaintiff's Charge on or after May 8,

---

[3] The court observes that the copy of the Charge in the record does not contain a "filed" date stamp.  (See ECF No. 35-2 at 47.)

3

2013, when Defendants received correspondence from the SCHAC.  (ECF Nos. 35-5 at 6 ¶ 22, 35-3 at 6 ¶ 18 & 35-4 at 5 ¶ 18.)  Additionally, Hayes asserts that until she received the correspondence from the SCHAC on May 8, 2013, she "never told anyone that . . . [Plaintiff] had complained of discrimination or that I thought . . . [Plaintiff] planned to file a complaint of discrimination."  (ECF No. 35-5 at 7 ¶ 24.)

## II.     LEGAL STANDARD AND ANALYSIS

In the September Order, the court made the following observations in denying Defendants summary judgment on Plaintiff's retaliation claim:

> On April 4, 2013, it was reported that Smith was disrespectful to Dr. Choi in front of patients. Mitchell reports that she spoke with Smith and informed her that if the behavior occurred again, she would be terminated immediately.  (ECF No. 37-4 at 65.)  As a result of that incident, Smith signed a written warning document.  (Id.)  On April 14, 2013, Mitchell sent an e-mail to Lakis noting that Smith's attitude had changed, but that she had a strategy to help improve Plaintiff's attitude, which she would explain over the phone or in person.  (ECF No. 37-8 at 11.)  On April 22, 2013, Mitchell sent another e-mail to Lakis indicating that she had discussed different options with Plaintiff and Smith.  (Id. at 14.)  At that time, it appears that she was considering moving Plaintiff to a position at the front desk, and considering either firing Smith or giving her one more chance.  (Id.)  Reportedly, on the morning of April 24, 2013, Mitchell asserts that management made the decision to terminate Plaintiff due to her conduct.  (ECF No. 37-4 at 65.)  However, unlike Smith, there is no indication that Plaintiff was ever given a written warning, nor is there any indication prior to April 24, 2013, that Defendants were considering terminating Plaintiff even though Mitchell allegedly had a conversation warning Plaintiff on the same day Smith signed her written warning document (ECF No. 37-4 at 48).  Additionally, there is no evidence—not even in Defendants' official response to the SCHAC, (see ECF No. 37-7)—of an intervening incident between April 22, 2013, and April 24, 2013, that might have caused Defendants to decide that it was better to terminate Plaintiff than move her to the front desk.  Based on the lack of evidence documenting Defendants' plans to terminate Plaintiff compared to the documentation regarding the possible termination of Smith as well as the timing of Plaintiff's firing, it reasonably appears to this court that Defendants' motives for terminating Plaintiff were questionable enough for Plaintiff's claim to survive summary judgment.  Accordingly, the court finds that there is a genuine dispute of material fact as to whether there is a casual connection between Defendants' alleged knowledge that Plaintiff filed a Charge with the EEOC and Defendants' alleged retaliation to the filing of the Charge by terminating Plaintiff.

4

(ECF No. 53 at 13–14.) Defendants seek reconsideration of the foregoing pursuant to Rule 54.

A.      Applicable Standard under Rule[4] 54(b)

Rule 54(b) provides the following:

> When an action presents more than one claim for relief—whether as a claim, counterclaim, crossclaim, or third-party claim—or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Id. Under Rule 54(b), the "district court retains the power to reconsider and modify its interlocutory judgments . . . at any time prior to final judgment when such is warranted." Am. Canoe Ass'n v. Murphy Farms, Inc., 326 F.3d 505, 514-15 (4th Cir. 2003); see also Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 12 (1983) (noting that "every order short of a final decree is subject to reopening at the discretion of the district judge"). The Fourth Circuit has offered little guidance on the standard for evaluating a Rule 54(b) motion, but has held motions under Rule 54(b) are "not subject to the strict standards applicable to motions for reconsideration of a final judgment." Am. Canoe Ass'n, 326 F.3d at 514; see also Fayetteville Investors v. Commercial Builders, Inc., 936 F.2d 1462, 1472 (4th Cir. 1991) (the Court found it "unnecessary to thoroughly express our views on the interplay of Rules 60, 59, and Rule 54"). In this regard, district courts in the Fourth Circuit, in analyzing the merits of a Rule 54 motion, look to the standards of motions under Rule 59 for guidance. See U.S. Home Corp. v. Settlers Crossing, LLC, C/A No. DKC 08-1863, 2012 WL 5193835, at *2 (D. Md. Oct. 18, 2012); R.E. Goodson Constr. Co., Inc. v. Int'l Paper Co., C/A No. 4:02-4184-RBH, 2006 WL 1677136, at *1 (D.S.C. June 14, 2006); Akeva L.L.C. v. Adidas Am., Inc., 385 F. Supp. 2d 559, 565–66

---

[4] The court observes that "rule" refers to the Federal Rules of Civil Procedure.

(M.D.N.C. 2005). Therefore, reconsideration under Rule 54 is appropriate on the following grounds: (1) to follow an intervening change in controlling law; (2) on account of new evidence; or (3) to correct a clear error of law or prevent manifest injustice. Beyond Sys., Inc. v. Kraft Foods, Inc., C/A No. PJM-08-409, 2010 WL 3059344, at *2 (D. Md. Aug. 4, 2010) ("This three-part test shares the same three elements as the Fourth Circuit's test for amending an earlier judgment under Rule 59(e), but the elements are not applied with the same force when analyzing an[] interlocutory order.") (citing Am. Canoe Ass'n, 326 F.3d at 514).

B.     The Parties' Arguments

In their Motion for Reconsideration, Defendants first reassert that SSFD and CDA should have been dismissed from the matter because they are not employers under Title VII since they each employ less than 15 individuals. (ECF No. 59 at 3 (citing, e.g., 42 U.S.C. §§ 2000e(b), 2000e-s(a)).) Defendants next assert that Plaintiff's retaliatory termination claim is not properly before the court because she failed to exhaust her administrative remedies by amending her charge of discrimination to include an allegation that her termination grew out of her discrimination charge. (Id. at 5–6.) As to this issue, Defendants argue that "it remains uncontradicted by admissible evidence that no one else – including the undisputed decision-makers on Harvey's termination, Mark Lakis and Jennifer Mitchell – had such knowledge, or other knowledge of Harvey's charge, until after her termination." (Id. at 6.)

Defendants further argue that the court erroneously found a causal connection between Plaintiff's Title VII protected activity of filing a charge of discrimination and her termination when "the uncontroverted sworn testimony [is] that the decision-makers in this case – Lakis and Mitchell – were unaware of Harvey's charge or plans to file a charge." (Id. at 9.) As a result, Defendants argue that "it would be clear error for the Court (or a jury) to impute knowledge of

6

Harvey's charge to Lakis or Mitchell when (1) Lakis and Mitchell have testified unequivocally, under oath on penalty of perjury, that they had no such knowledge, (2) Hayes, the only person Harvey allegedly told about her charge, denies having told anyone, and (3) Harvey has no evidence, only unsupported conjecture, that Hayes may have told Mitchell." (Id. at 11.)

Finally, Defendants request that the court reassess its finding regarding pretext asserting that "[g]iven the admissible record evidence of concerns about Harvey's attitude, as well as the uncontroverted sworn testimony of the decision-makers that they were unaware of Harvey's discrimination charge until after her termination, Defendants respectfully submit that it was clear error for the Court to conclude that, due to limited documentation, the decision-makers may have been pretextually motivated to terminate Harvey in retaliation for filing a discrimination charge." (Id. at 14.)

Plaintiff opposes Defendants' Motion arguing that SSFD and CDA "are proper parties" and that her retaliation claim "should not be dismissed for failure to exhaust administrative remedies." (ECF No. 61 at 2.) Plaintiff argues that the court correctly held that there was "a genuine dispute of material fact as to [the] causal connection for Plaintiff's Title VII retaliation claim" based on "[t]he temporal proximity, the manner in which Plaintiff's termination was not documented in the same manner as the other white employee, the suddenness of the termination when no other events can be identified to have occurred between March and April, and the other evidence addressed by the Court . . . ." (Id. at 2, 5.) Finally, Plaintiff argues that the court correctly concluded that "Plaintiff presented sufficient evidence to establish pretext" due to "the dearth of documentation regarding Plaintiff's failure to improve her attitude, job performance, or desire to work as a member of a team, . . . ." (Id. at 5 & 8 (citing ECF No. 53 at 16).)

7

C.     The Court's Review

In their Motion for Reconsideration, Defendants complain about three things: (1) the continued inclusion of SSFD and CDA in this case as Plaintiff's employers, (2) Plaintiff's alleged failure to exhaust her claim for retaliation, and (3) the finding of a causal connection and pretext also as to Plaintiff's claim for retaliation.  Defendants' arguments regarding these issues do not reference either an intervening change in controlling law or new evidence previously unavailable.  Instead, Defendants seek reconsideration on the basis that it would be an error of law or manifest injustice if the court failed to reverse its decision denying Defendants' Motion for Summary Judgment on Plaintiff's claim for retaliation.

*1. Employer Status of SSFD and CDA*

Defendants first seek reconsideration of the September Order on the basis that the court "lacks jurisdiction to entertain a Title VII claim" against either SSFD or CDA.  (ECF No. 59 at 4.)

Under 42 U.S.C. § 2000e(b), an employer is defined as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person, . . . ."  Id.  Employers with less than 15 employees are considered exempt from Title VII's requirements.  Depaoli v. Vacation Sales Assocs., L.L.C., 489 F.3d 615, 622 (4th Cir. 2007).  Because Title VII does not apply to all employers, "the threshold number of employees for application of Title VII is an element of a plaintiff's claim."  Arbaugh v. Y & H Corp., 546 U.S. 500, 516 (2006).  Thus, summary judgment is appropriate if, as a matter of law, a defendant is not an employer under Title VII.

Upon consideration of the parties' respective positions, the court is persuaded that SSFD

does not meet the definition of an employer under Title VII. The uncontroverted evidence before the court, is at all relevant times, SSFD had less than 10 employees. (E.g., ECF Nos. 35-5 at 1 ¶ 2 & 35-4 at 1 ¶ 3.) Therefore, SSFD is entitled to summary judgment on the claim asserted against it for alleged retaliation in violation of Title VII. E.g., Singleton v. Greenville Hous. Auth., C/A No. 6:09-2104-JMC-KFM, 2010 WL 6065085, at *4 (D.S.C. Sept. 21, 2010) ("A defendant must be an employer within the definition of Title VII as a jurisdictional prerequisite to the maintenance of a Title VII action."); Sizemore v. Sw. Va. Reg'l Jail Auth., C/A No. 1:08cv00035, 2009 WL 396115, at *6 (W.D. Va. Feb. 17, 2009) ("[T]he Fourth Circuit has clearly spoken on this issue, holding that it is only employers that can be held liable under Title VII."). Defendants' Motion for Reconsideration is **GRANTED** because SSFD is not an employer under Title VII.

As to CDA's status as an employer, the court observes that even though Defendants' Position Statement stated that CDA had 60 employees during the period of time relevant to this action (ECF No. 37-7 at 3), there is also evidence in the record that CDA should not be considered an employer under Title VII because it has never had any employees. (See ECF Nos. 35-3 at 2 ¶ 7 & 35-5 at 2 ¶ 4.) The court further observes that it was unable to find any evidence in the record that actually demonstrated that CDA was Plaintiff's employer at any relevant time.[5] As a result, the court concludes that there might a genuine dispute of fact regarding whether CDA meets the definition of employer under Title VII, but there is not any genuine dispute of fact as to whether CDA was Plaintiff's employer. Accordingly, the court **GRANTS** Defendants' Motion for Reconsideration and finds that CDA is also entitled to summary judgment on Plaintiff's claim for retaliation.

---

[5] Plaintiff makes minimal reference to CDA in her Complaint (ECF No. 1 at 1 ¶ 3, 2 ¶ 8 & 2–3 ¶ 11) and Deposition (ECF Nos. 37-1 at 30:184:9–12 & 35-2 at 2:47:2–3).

### *2. Exhaustion of the Retaliation Claim*

Defendants next move for reconsideration asserting that Plaintiff did not exhaust administrative remedies as to her Title VII retaliation claim.  (ECF No. 62 at 3.)

Under precedent of the United States Court of Appeals for the Fourth Circuit, if a party's filing of an EEOC complaint results in alleged retaliatory acts, then those acts relate back to the administrative charge, and no second EEOC charge is required.  Nealon v. Stone, 958 F.2d 584, 590 (4th Cir. 1992).  "The rationale behind this rule is that such a claim falls within the general rule that a Title VII lawsuit may extend to 'any kind of discrimination like or related to allegations contained in the charge and growing out of such allegations during the pendency of the case before the Commission,' and that it is impractical to expect victims of employment discrimination to file a new EEOC charge for retaliation if they have already been retaliated against for filing the first EEOC charge."  Windsor v. Bd. of Educ. of Prince George's Cty., Civil Action No. TDC-14-2287, 2016 WL 4939294, at *7 (D. Md. Sept. 13, 2016) (citing Nealon, 958 F.2d at 590).  If, however, the allegations of retaliation were not the result of the filing of an EEOC charge, then the court must analyze whether the "retaliation claim relates back to the charge that is properly before [the court]."  Jones v. Calvert Grp., Ltd., 551 F.3d 297, 304 (4th Cir. 2009); see also Brown v. Runyon, No. 96-2230, 1998 WL 85414, at *3 (4th Cir. Feb. 27, 1998) ("Nealon's 'relation back' rule presupposes both that a retaliation count in a Title VII lawsuit be 'related to' and have 'grown out' of the EEO charge while the administrative charge remained pending.  If either predicate condition is lacking, the rule cannot operate to overcome a plaintiff's failure to have exhausted administrative remedies.").

As specified above, the evidence of record only demonstrates that Plaintiff signed the document purporting to be her Charge one day before she suffered an allegedly retaliatory

termination. (ECF No. 35-2 at 47.) However, even though the chronology of events surrounding Plaintiff's termination is unclear, there is not any evidence before the court that Defendants' decision-makers, Mitchell and Lakis, were aware of the substantive allegations of the Charge (id.) before they terminated Plaintiff. (See ECF Nos. 35-3 at 6 ¶ 19 & 35-4 at 5 ¶ 19.) Therefore, to survive Defendants' Motion, Plaintiff's claim of retaliation needed to be reasonably related to her EEOC Charge so that it would be expected to follow from a reasonable administrative investigation. Smith v. First Union Nat'l Bank, 202 F.3d 234, 247 (4th Cir. 2000). Upon review, the court concludes that Plaintiff has failed to demonstrate how her alleged retaliatory termination would have followed a reasonable investigation of her Charge alleging harassment by Dr. Choi. In this regard, Nealon is inapplicable to the instant case and Plaintiff as a result was required to either amend her pending Charge or file a second charge of discrimination regarding her retaliatory discharge in order to exhaust her administrative remedies. Because she failed to file this additional/amended charge, Defendants are entitled to summary judgment on Plaintiff's retaliation claim for failure to exhaust administrative remedies.

*3. A Prima Facie Case of Retaliation*

Finally, Defendants assert that they are entitled to reconsideration of the court's finding that Plaintiff demonstrated a prima facie case of retaliation. (ECF No. 59 at 7.)

A plaintiff may establish a prima facie case of retaliation by demonstrating "(1) she engaged in a protected activity, (2) the employer acted adversely against her, and (3) there was a causal connection between the protected activity and the asserted adverse action." Hoyle v. Freightliner, LLC, 650 F.3d 321, 337 (4th Cir. 2011). As the basis for her claim of retaliation, Plaintiff asserted that Defendants fired her "because of the LLR complaint and the EEOC complaint which I believe Amanda [Hayes] told them." (ECF No. 37-1 at 29:181:10–22.) Upon

11

a reinitiated review of the record in the context of Defendants' Motion for Reconsideration, the court finds that Plaintiff is unable to develop a prima facie case of retaliation from either of her complaints.

Plaintiff's complaint to the LLR about Dr. Choi's treatment of patients fails in the context of a prima facie case of retaliation because it was not protected activity under Title VII. Title VII's anti-retaliation provision prohibits an employer from discriminating against any employee "because [1] he has opposed any practice made an unlawful employment practice by this subchapter, or [2] because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3(a). The "[1]" clause is known as the "opposition clause," and the "[2]" clause is known as the "participation clause." Crawford v. Metro. Gov't of Nashville & Davidson Cty., Tenn., 555 U.S. 271, 274 (2009). In this regard, Plaintiff's complaint to LLR about Dr. Choi's treatment of patients was not a protected activity under the participation clause because it did not involve an official Title VII investigation. Laughlin v. Metro. Wash. Airports Auth., 149 F.3d 253, 259 (4th Cir. 1998) ("Activities that constitute participation are outlined in the statute: (1) making a charge; (2) testifying; (3) assisting; or (4) participating in any manner in an investigation, proceeding, or hearing under Title VII.") (citing 42 U.S.C. § 2000e-3(a)). Moreover, Plaintiff's complaint to LLR about Dr. Choi's treatment of patients was not a protected activity under the opposition clause because there is no indication that Plaintiff's actions as to Dr. Choi were in any way related to, or could be characterized as, opposing some sort of discrimination. Id. ("To qualify as opposition activity an employee need not engage in the formal process of adjudicating a discrimination claim. See Armstrong v. Index Journal Co., 647 F.2d 441, 448 (4th Cir. 1981). Opposition activity encompasses utilizing informal grievance procedures as well as staging

12

informal protests and voicing one's opinions in order to bring attention to an employer's discriminatory activities."). As a result, Plaintiff did not engage in protected activity as it relates to her LLR complaint and therefore she fails to establish a prima facie case of retaliatory discharge as to this issue.

Plaintiff's EEOC Charge fails in the context of a prima facie case of retaliation because there is a lack of a causal link between Plaintiff's protected activity of complaining and the alleged retaliatory termination she suffered. "[A] causal connection for purposes of demonstrating a prima facie case [of retaliation] exists where the employer takes adverse employment action against an employee shortly after learning of the protected activity." Pascual v. Lowe's Home Ctrs., Inc., 193 F. App'x 229, 233 (4th Cir. 2006) (quoting Price v. Thompson, 380 F.3d 209, 213 (4th Cir. 2004)) (emphasis added). "'Since, by definition, an employer cannot take action because of a factor of which it is unaware, the employer's knowledge that the plaintiff engaged in a protected activity is absolutely necessary to establish the third element of the prima facie case.'" Wright v. Sw. Airlines, 319 F. App'x 232, 234 (4th Cir. 2009) (quoting Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 657 (4th Cir. 1998)).

Upon review, the court finds that the facts do not establish that Mitchell and Lakis, the individuals who ultimately decided to terminate Plaintiff,[6] were aware of her EEOC Charge prior

---

[6] The court observes that it is undisputed that Hayes did not have the authority to terminate Plaintiff. According to Hayes, her duties were administrative in nature and she "never had authority to hire, fire, promote, demote, or reassign any employee" or "make changes in employees' pay and benefits." (ECF No. 35-5 at 7 ¶ 24.) Additionally, Plaintiff has not suggested evidence that would demonstrate Hayes was a biased employee who had the ability to influence the decision to terminate Plaintiff. E.g., Olmsted v. Taco Bell Corp., 141 F.3d 1457, 1461 (11th Cir. 1998) (upholding a jury verdict against an employer where there was circumstantial evidence that "the decision to terminate . . . [the plaintiff] was at least influenced by individuals . . . who unequivocally had knowledge of . . . [the protected activity].").

to making that decision.[7]  The uncontroverted facts in the record demonstrate that the only reasonable inference is that Hayes, even if she knew about the EEOC Charge, did not tell Mitchell or Lakis about the EEOC Charge prior to Plaintiff's termination.  (ECF Nos. 35-5 at 7 ¶¶ 23–24, 35-3 at 6 ¶¶ 18–19, 35-4 at 5 ¶¶ 18–19.)  The court is further unable to impute either direct or circumstantial knowledge of the Charge to either Mitchell or Lakis at the time the decision was made to terminate Plaintiff, even though she signed the Charge on April 24, 2013, the day before she was terminated.  Because Plaintiff has failed to allege facts sufficient to create an inference that the individuals responsible for her termination had knowledge of her protected activity, she is unable to satisfy the causality element of a prima facie retaliation claim.[8]  See Wright, 319 F. App'x at 234 ("Although it appears accurate that certain airline officials were aware of [Plaintiff-Appellant] Wright's FMLA request, she utterly fails to demonstrate that the particular supervisors involved in her termination possessed such knowledge . . . .  As Wright failed to allege facts sufficient to prove that the supervisors responsible for her termination had knowledge of her FMLA request, she was unable to establish a prima facie retaliation claim, . . . .").

As a result of the foregoing, the court finds that Defendants are entitled to summary judgment on Plaintiff's claim for retaliation.  Accordingly, the court **GRANTS** Defendants'

---

[7] Lakis states that "[i]t is my recollection that it was Jennifer [Mitchell]'s opinion or recommendation – whether volunteered by her or prompted by me – that we terminate Stephanie [Harvey]'s employment, and I supported that recommendation."  (ECF No. 35-3 at 5 ¶ 14.)

[8] In the September Order, the court primarily relied on Hernandez v. Spacelabs Medical, Inc., 343 F.3d 1107, 1114–1115 (9th Cir. 2003), to find the existence of a causal connection.  The relevant difference between this case and Hernandez is that the decision-maker in Hernandez knew about Hernandez's protected activity prior to his termination.  Id. at 1114 ("A reasonable jury could infer from Hernandez's evidence both that Pray [the decision-maker] believed that Hernandez and Sam had discussed Pray's conduct toward Sam, and that Pray was upset about the fact that Hernandez knew about his conduct.  A reasonable jury could also infer that once Pray learned that someone had made a harassment complaint to Lasher, he knew or suspected that this person was Hernandez and decided to retaliate against him.").

Motion for Reconsideration.[9]

## III. CONCLUSION

For the foregoing reasons, the court **GRANTS** Defendants' Motion for Reconsideration of the Order entered on September 28, 2016. (ECF No. 59.) Upon reconsideration, Defendants are hereby entitled to summary judgment on Plaintiff's claim for retaliation.

**IT IS SO ORDERED.**[10]

*J. Michelle Childs*
United States District Judge

December 27, 2016
Columbia, South Carolina

---

[9] Based on this finding, the court declines to address Defendants' arguments regarding pretext.

[10] The court observes that while the instant Motion was pending, Defendants filed a Motion to Compel Plaintiff to Provide Updated Discovery Responses. (ECF No. 64.) As a result of the aforementioned decision to grant their Motion for Reconsideration, Defendants are entitled to summary judgment on Plaintiff's last remaining claim for retaliation. Accordingly, the court **DENIES AS MOOT** Defendants' Motion to Compel. (ECF No. 64.)